# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOUGLASS BRIDGEFORD, #330-749 | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. PJM-13-495 |
| DR. NAMIELY, <br> P.A. KEVIN MCDONALD, <br> DR. ROSS CUSHINGS, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Pending is self-represented Plaintiff Douglass Bridgeford's Complaint filed pursuant to 42 U.S.C. § 1983. Defendants Contah Nimely,[1] M.D., Kevin McDonald, P.A., and Stacey King, R.N. (collectively the "Wexford Defendants")[2] by their counsel, have filed a Motion to Dismiss the Complaint or, in the Alternative for Summary Judgment. ECF 61. Defendant Dr. Ross Cushing, by his counsel, has filed a separate Motion to Dismiss or, in the Alternative, for Summary Judgment supported by his declaration and Bridgeford's audiology records. ECF 64. Bridgeford has filed a Motion for Summary Judgment (ECF 63) and a Motion for Summary Judgment, or in the Alternative Motion to Dismiss (ECF 70). Additionally, Bridgeford has filed a "Motion for Summary Judgment in the Affirmative Seeking an Open Court Hearing" (ECF 77) to which the Wexford Defendants have filed an opposition. ECF 78.

---

[1] Defendant Contah Nimely's name is misspelled by Plaintiff as "Namiely." The Clerk will be directed to change the docket to reflect the proper spelling of Defendant's name as "Nimely."

[2] Nimely, McDonald, and King are or were medical providers employed by Wexford Health Sources, Inc. ECF 78. Wexford Health Sources, Inc. has contracted with the State of Maryland to provide medical services to inmates at certain state correctional institutions, including the Maryland Correctional Training Center and the Roxbury Correctional Institution. ECF 61, Exhibits 2-3.

No hearing is needed to resolve the issues. *See* Local Rule 106.5 (D. Md. 2011). For reasons to follow, the Wexford Defendants' Motion (ECF 61), treated as a Motion for Summary Judgment, will be GRANTED. Dr. Cushing's Motion (ECF 64), also treated as a Motion for Summary Judgment, will be GRANTED. Plaintiff has replied by filing Motions for Summary Judgment (ECF 77 and 78) and a "Motion for Summary Judgment in the Affirmative Seeking an Open Court Hearing" (ECF 77) which will be DENIED. Judgment will be entered in favor of Defendants and against Plaintiff by separate Order.

## BACKGROUND

On February 1, 2013, Bridgeford, who was at the time an inmate at the Maryland Correctional Training Center, filed this Complaint.[3] The Court ordered that this case proceed as to the following allegations: 1) whether Dr. Cushing's failure to replace Bridgeford's hearing aid constituted inadequate medical treatment; 2) whether Defendants "falsified" Bridgeford's medical records or failed to provide adequate medical treatment for his hearing impairment since September of 2012; 3) whether Dr. Nimely provided inadequate medical treatment for Bridgeford's eczema and pain by discontinuing his "Eucerin-Plus" lotion; 4) whether Bridgeford received inadequate treatment for pain in his right shoulder and arm; and 5) whether Bridgeford was unlawfully denied accommodations for his disability (deafness).[4] As later amended, by Bridgeford, the Complaint also alleges: 6) King falsified medical reports to make it appear Bridgeford was not compliant with medical treatment; 7) King changed Bridgeford's doctors and skin care treatment; and 8) McDonald was not truthful and misled Dr. Nimely. ECF 31 and 32.

---

[3] Bridgeford is presently housed at the Roxbury Correctional Institution in Hagerstown, Maryland.

[4] Because Bridgeford also claimed his housing conditions failed to accommodate his needs as a deaf inmate, the Court deemed it appropriate to add the Warden of the Maryland Correctional Training Center as a party defendant. Bridgeford's subsequent Motion to Voluntarily Dismiss the Warden and his access to a TYY machine claim was granted on July 16, 2013. ECF 44 and 47.

As redress, Bridgeford seeks $25,000 from Dr. Nimely and injunctive relief, including access to a TYY machine and to "never change" non-formulary medications. ECF 1. Bridgeford seeks $3,000 damages against King. ECF 30.

## FACTS

Defendants declarations and records filed in support of their Motions for Summary Judgment. ECF 61 and 63 are summarized below.

I. **Bridgeford's Medical Records submitted by Wexford Defendants**

Bridgeford's medical records show that he has a medical history which includes hypertension, hearing impairment, diabetes mellitus, and chronic pain. The records show Bridgeford is monitored and treated for diabetes with medication, has indicated that he does not want injectable insulin,[5] and has been cautioned repeatedly by medical providers concerning his lack of compliance with medical orders for diabetes treatment. ECF 61, Exhibit 1 at 1-5, 10, 12, 35, 44-45, 48, 50, 56, 58, 70-72. Additionally, he has been examined and received prescription medication for shoulder and arm pain. *Id*. at 5, 7, 10, 44-45, 47, 49, 51, 54, 58. He has repeatedly requested Cortisone injections for shoulder pain but was informed such treatment is contraindicated due to his high blood sugar levels. *Id*. at 31, 37, 58, 63.

On October 11, 2012, Dr. Nimely requested an audiology consultation for Bridgeford, after Bridgeford showed him his "cracked" hearing aid and reported that he is totally deaf in his left ear. *Id*. at 6. On November 2, 2012, Dr. Ross Cushing, an audiologist, evaluated Bridgeford. *Id*. at 9. The record of the evaluation reads in part:

> Mr. Bridgeford reports that he broke his hearing aid and prvided [sic] the broken device to me today. He denies any change in hearing since last

---
[5] Bridgeford told medical providers that he is fearful of injections, prefers his aunt's advice for treating diabetes, and Al-Jazeera television reported Levemir insulin was not approved by the Food and Drug Administration. ECF 61,Exhibit 1 at 1, 10, and 14.

3

> hearing test from 4/22/2010. His test results from that date indicate no hearing in the left ear (due to mastoidectomy) and a moderate to severe hearing loss in the right ear (with fair behavioral responses in terms of reliability).
>
> ………………..
>
> Mr. Bridgeford has a hearing loss according to his behavioral results (how he responds to the sounds by raising his hand). His need to use TTY would only be to communicate with his father, who he reports is deaf. I do not believe that he would need TTY for his own hearing if I provide him with a replacement hearing aid.

*Id*. Cushing recommended a specialized RIC BTE hearing aid that would be more durable and that corrections officials permit Bridgeford TTY access at their discretion. *Id*.

Bridgeford inquired about his hearing aid during a medical visit on November 19, 2012. He stated he was having difficulty hearing and therefore difficulty waking up in the morning to take his medication. *Id*. at 10. On January 7, 2012, Bridgeford asked again about his hearing aid, explaining that he was missing "chow and phone calls." *Id*. at 14. On January 10, 2013, Dr. Nimely submitted a request for a RIC BTE hearing aid for Bridgeford. *Id*. at 16.

On January 18, 2013, Bridgeford was seen by Kevin McDonald, a physician's assistant. Bridgeford inquired about a hearing aid for his right ear which he reported had been taken from him and not returned.[6] He stated had 40% hearing in that ear. *Id.* That same day, Eucerin Plus lotion, an over-the-counter moisturizer previously prescribed for Bridgeford, was denied as a non-formulary. *Id*. at 3, 10, and 31. Bridgeford declined the formulary substitute, LubriSkin. *Id*. at 31.[7]

---

[6] It appears Bridgeford thought his broken hearing aid was sent for repair. *See* ECF No. 16, Exhibit 1 (noting Bridgeford stated that he had surrendered the hearing aid for repair).

[7] Dr. Nimely explains the formulary in her affidavit as follows:

> The formulary is a continually revised compilation of pharmaceuticals that reflects the current clinical judgment of the medical staff. The formulary system is a method employed by the medical staff to evaluate, appraise and select from among the numerous available drug products that are considered the most useful in patient care. The formulary

On January 18, 2013, Wexford's utilization review recommended a standard hearing aid for Bridgeford. *Id*. at 24. On February 27, 2013, Dr. Cushing fit Bridgeford with Starkey RIC BTE hearing aid for his right ear.

On February 28, 2013, Bridgeford complained of right arm numbness. He indicated that he had limited range of motion and numbness from his shoulder to just below his arm. *Id*. at 28. He attributed the numbness to his insulin injection. He told medical personnel that "[i]t happened between the 21st and 23rd, when I got my shot by nurse Dale…."[8] *Id.* at 28. Bridgeford was seen by medical providers for shoulder pain on March 1 and 8, 2013. *Id*. at 31. On March 8, 2013, Bridgeford declined treatment for shoulder pain after he was informed that his diabetes was not well controlled at the time and a steroid injection was shoulder pain was not advised. It was noted that Bridgeford "had refused insulin therapy on multiple visits." *Id.*

On March 15, 2013, medical providers explained to Bridgeford, after he initially refused insulin, that this could increase his chances for diabetic neuropathy. *Id*. at 35.[9]

On March 14, 2013, Bridgeford complained that his feet needed mineral oil that had not been provided to him. *Id.* at 34. On March 19, 2013, Bridgeford complained during a sick call visit of suffering pain in his right arm, shoulder, and back for over one month and "nobody will do anything for me." *Id* at 38. When the nurse reminded him that he had been seen recently by

---

> system is an important tool for assuring the quality of drug use and controlling its cost. Non-formulary products may be requested by medical staff, but such requests are only approved if an independent review confirms there is a particularized, necessary benefit product that is not available from products within the formulary.

ECF 61, Exhibit 2.

[8] Dr. Nimely states Bridgeford has a history of "intermingling complaints of both left and right shoulder pain." ECF No. 61, Exhibit 2, ¶ 11. Bridgeford has also presented complaints of right arm pain from a stabbing /shooting in 2000. *Id*. ¶ 12, *see also* Exhibit 1 at 30 and 36 (indicating prior shoulder injury). Nurse Dale is not a defendant in this proceeding..

[9] Diabetic neuropathy is damage to nerves that occurs due to high blood sugar levels. Symptoms may include tingling, burning, or loss of feeling in the arms and legs. *See* ww.nlm.nih.gov/medlineplus/ency/article/000693.htm.

a doctor for the shoulder pain and refused treatment, Bridgeford replied that he had "no idea what she is talking about." *Id*.

On March 20, 2013, Bridgeford was seen for diabetes assessment. Bridgeford informed the nurse that his only problem was pain and numbness in his right shoulder and requested Glyburide, an oral diabetes medication. *Id*. at 39 and Wexford Defendants' Memorandum, n. 13.

On April 12, 2013, P.A. McDonald saw Bridgeford for pain management follow-up. The medical record reads:

> Patient seen by administration today with complaint that he still has shoulder pain and that he has not received his mineral oil lotion. Request is for bridge order pending more definitive treatment. He is awaiting possible steroid injection to the right shoulder but his HGA1 continues to be elevated.

*Id*. at 41.[10] The medical notes show an upper right arm neoprene compression sleeve was ordered for Bridgeford. *Id.* X-rays of Bridgeford's right shoulder showed "mild degenerative changes present along the shoulder joint" and no evidence of "acute fracture, dislocation, or subluxation." *Id*. at 43.

On April 23, 2013, Maksed Choudry, M.D. examined Bridgeford. Dr. Choudry noted that Bridgeford complained of chronic pain and exhibited restricted range of motion. *Id*. at 44. Dr. Choudry indicated: 1) Bridgeford was ordered a shoulder brace which he never received; 2) Bridgeford did not get a steroid injection because his HbA1C was high; and 3) Bridgeford's recent blood sugars "have been good." *Id.* Bridgeford requested discontinuation of the order for his arm sling and knee splint/brace. *Id* at 46 and 47.

---

[10] HbA1c is a lab test that shows the average level of blood sugar (glucose) over the previous 3 months. A normal A1C level is below 5.7. ECF 61, Exhibit 1 ¶ 10.

On May 13, 2013, P.A. McDonald submitted a non-formulary order for mineral oil for Bridgeford. *Id*. at 51. The order was not approved. *Id*. at 53. On May 28, 2013, Bridgeford was recorded as having dry skin but no open sores were observed. *Id*. at 52.

On May 29, 2013, Bridgeford was scheduled for a steroid injection to his shoulder. *Id*. at 54. He was advised his diabetes was not sufficiently controlled and the steroid injection was contra-indicated. *Id*.

On June 6, 2013, John Morgan, M.D. met with Bridgeford to discuss noncompliance with his insulin regimen. *Id*. at 56. Dr. Morgan's medical notes state:

> Uncontrolled diabetic, last hgba1c seen because of insulin noncompliance. He has diabetes so out of control he was not able to be given a steroid shot for this shoulder since the steroid would further drive his diabetes out of control. He says loudly and repeatedly that he will NOT take insulin. He focuses only on the need for creams for his skin, and points to skin on hand (which to me appears normal) when asked to show example of abnormal skin. He absolutely refuses to take insulin. I will therefore discontinue all insulin. He does have oral meds already prescribed.

*Id*.

On June 10, 2013, Bridgeford requested a cortisone shot for his right shoulder. Medical providers advised him his HgbA1C levels needed first to be under control. *Id*. at 58. Bridgeford asserted that Dr. Nimely told him that he could have the injection when his levels were in the "9's," and his current level was 9.3. *Id*. When contacted, Dr. Nimely denied making the statement and indicated the test results needed to be lower before a cortisone injection would be given. *Id*.

On July 17, 2013, Bridgeford was seen by Dr. Morgan whose notes state Bridgeford's diabetes was "out of control." *Id*. at 70. Bridgeford agreed to take Metformin 850 mg., an oral medication for his diabetes twice daily, and refused insulin. *Id*. at 70-72. Additionally, Bridgeford voiced concerns about his skin lotions. Dr. Morgan observed Bridgeford had clogged

pores attributable to excessive lotion use, and reduced the lotions prescribed. *Id*. Dr. Morgan observed that although Bridgeford complained of right shoulder pain, he was able to move his right shoulder in a rapid rotary motion. *Id*. On July 20, 2013, Bridgeford told medical providers that he if he did not get his cortisone shot, he needed Ultram,[11] a pain reliever. ECF No. 61, Memorandum, n. 14.

## II. Wexford Defendants' Declarations

### A. Contah Nimely, M.D.

Dr. Nimely attests that Bridgeford is regularly seen and evaluated by physicians in the for his chronic health problems, including diabetes mellitus, hypertension, and pain. She describes Bridgeford's eczema as "mild." ECF 61, Exhibit 2. Dr. Nimely states Bridgeford has dry skin but is otherwise symptom-free. Bridgeford's athlete's foot was successfully treated for cracks in the skin between his toes with anti-fungal cream, and he was prescribed moisturizers, topical Vitamin A and E lotions, fish oil, mineral oil, and LubriSkin lotion. Dr. Nimely, states Bridgeford's eczema is aggravated by his non-compliance with his diabetes management plan. She attests Bridgeford's allegation that Levemir insulin is not FDA approved is incorrect. Dr. Nimely attests:

> Both Lantus and Levemir, which have been prescribed to Plaintiff, are fully approved long-acting insulins appropriate to treat Plaintiff's diabetes. As a result of his insulin non-compliance Plaintiff's hemoglobin A1c test results have been significantly elevated. Elevated blood sugar can cause dry skin and lead to bacterial infection of eczema.

*Id*. at ¶ 9.

Dr. Nimely attests a non-formulary request for Eucerin lotion and mineral oil for Bridgeford were denied because LubriSkin, a formulary product, was determined adequate for

---

[11] Ultram, which is the brand name for tramadol, is used to relieve moderate to moderately severe pain. *See* http:// www.webmd.com/drugs/drug-11276-ltram+Oral.aspx?drugid=11276&drugname=Ultram+Oral.

treatment. Dr. Nimely notes Eucerin is one of many available over-the-counter skin care lotions and is neither a medication specifically designed to treat eczema nor skin complications associated with diabetes. Further, she states that "[w]hile it may be subjectively preferable to Plaintiff, there is no reason a substitute product would not be equally effective in treating Plaintiff's symptoms." *Id*. ¶ 8.

> In regard to Bridgeford's request for a cortisone injection, Dr. Nimely states:

> Plaintiff's complaints regarding his right arm pain are also impacted by his elevated glycated hemoglobin (HbA1c) levels. HbA1c is a lab test that shows the average level of blood sugar (glucose) over the previous 3 months. A normal A1C level is below 5.7. A level over 8 indicates unacceptably poor control of diabetes. Plaintiff's levels have consistently been in the range of 9-11. Plaintiff seeks a cortisone shot, which is contraindicated when HbA1c levels exceed normal levels. Plaintiff has verbalized that diet and exercise alone will suffice to reduce his HbA1c levels. While diet and exercise are an important lifestyle adjunct in treating diabetes, Plaintiff's diabetes requires a regular insulin program to adequately control the disease. Plaintiff has been educated regarding the importance of insulin as part of his treatment plan. Notwithstanding, the foregoing, Plaintiff has recently been so non-compliant with his insulin injections they were discontinued entirely, as irregular insulin injection in combination with potentially irregular dietary intake can lead to unpredictable, even dangerous, blood sugar peaks and lows. Accordingly, Plaintiff's diabetes is now being treated with oral anti-diabetic medications such as Glucotrol and Metformin.

*Id*. at ¶ 10. Dr. Nimely indicates that Bridgeford will not be evaluated for cortisone shots until his HbA1C levels are within normal range. *Id.* at ¶ 12. Further, she notes Bridgeford has been prescribed Ultram for chronic right arm pain and Neurontin (gabapentin)[12] for neuropathic pain. *Id*.

Regarding Bridgeford's hearing impairment, Dr. Nimely attests he is able to adequately communicate with others without a hearing aid. *Id*. ¶ 14. "Moreover, with his hearing in place,

---

[12] Neurontin is the brand name for Gabapentin, a medication used to relieve nerve pain including diabetic neuropathy. *See* http://www.webmd.com/drugs/mono-8217-GABAPENTIN+-+ORAL.aspx?drugid= 9845& drugname=Neurontin.

Plaintiff's hearing is restored to an acceptable functional level and therefore does not require TTY facilities." *Id.* ¶ 15.

Dr. Nimely denies ever intentionally placing incorrect or false information in Bridgeford's medical file or otherwise obstructing his medical care in any manner. *Id.* ¶¶ 16-18. She attests she is not aware of any intentional errors or false information included on any of Plaintiff's medical records as attached by the Wexford Defendants as Exhibit 1 in this case. *Id.*

Dr. Nimely states Bridgeford's allegations that Stacey King has altered his medical records "are not, and cannot be correct" because King, who is Assistant Director of Nursing at Roxbury Correctional Institution, "is not responsible for issuing prescription orders for the medications Plaintiff receives." *Id.* ¶ 18. Lastly, Dr. Nimely attests she is not aware of any instance in which Kevin McDonald, P.A. intentionally mislead her regarding any matter concerning Bridgeford's medical care. *Id.*

### B. Kevin McDonald, P.A.

Kevin McDonald attests "he has never intentionally placed incorrect or false information in Plaintiff's medical file, or otherwise obstructed Plaintiff's medical care in any manner." ECF 61, Exhibit 3, ¶ 4. He attests he has "never intentionally misled any health care provider regarding Plaintiff's medical care." *Id.* In sum, McDonald denies Bridgeford's allegations that he has falsified records, lied about Bridgeford's medical condition, and/or stole Bridgeford's medications. *Id.* ¶¶ 3-4.

### C. Stacey King, R.N.

Stacey King is Assistant Director of Nursing at Roxbury Correctional Institution where her responsibilities are limited to supervising nursing staff. ECF 61 Exhibit 4. She attests she does not have any supervisory authority over medical providers nor involvement in prescribing

medications, whether formulary or non-formulary. She states that she has no involvement in directly delivering medical care to Bridgeford or making any clinical determinations about his care. Further, she attests that she has "never intentionally placed incorrect or false information in Plaintiff's medical file, has never caused anyone else to do so, nor otherwise obstructed Plaintiff's care in any manner." ECF 61, Exhibit 4 ¶ 5. King denies Bridgeford's allegations that she falsified his records, lied about his medical condition, and/or stole his medications. *Id*. ¶ 3 and 5.

### III. Dr. Ross Cushing

#### A. Declaration

On October 11, 2012, Dr. Nimely requested a hearing aid repair and evaluation for Bridgeford. *Id*. ¶ 6. Dr. Nimely asked Dr. Cushing evaluate Bridgeford for his "ability to use regular phone." *Id*.

On November 2, 2012, Bridgeford brought his broken hearing aid to Dr. Cushing. Dr. Cushing attests that when he asked Bridgeford whether he could use a regular telephone, Bridgeford replied that "his father needs to use TTY to communicate so that is why he wants access to it." *Id*. ¶ 6. Bridgeford reported that his father is deaf. *Id.* ¶¶ 6 and 10.[13]

Dr. Cushing advised Dr. Nimely that Bridgeford did not require TTY for his own hearing if a replacement hearing aid was provided and recommended a "RIC BTE" hearing aid which would be more durable. *Id*. Additionally, Dr. Cushing recommended Bridgeford have "access to TTY phone if the correctional administration believes this is a reasonable request in order to communicate with his family." *Id*.

---

[13] Upon his transfer to the Roxbury Correctional Institution, Bridgeford was placed in special needs housing which is equipped with a phone system that provides TYY services. ECF 26, Exhibit 4.

On February 27, 2013, Dr. Cushing examined Bridgeford, fitted him with a new RIC BTE hearing aid, provided an earpiece, cleaning tool, storage case, wax filters, and batteries, and instructed him on proper use and maintenance. *Id*. ¶ 8.

Dr. Cushing attests "Wexford has an approval process for all hearing aids, the details of which I am not privy. I do know that the approval process takes time and in this case resulted in some delay in obtaining a replacement hearing aid for Mr. Bridgeford." *Id*. ¶ 9.

Dr. Cushing denies Bridgeford's allegation that he failed to return a hearing aid to him, provide batteries, or follow-up concerning his hearing issues. *Id*. ¶¶ 11 and 12. Bridgeford was provided a new hearing aid after his old one was returned beyond repair. He attests that it is not his "role or responsibility to provide hearing aid batteries to my patients," and explains that he usually provides a few batteries as a courtesy when he delivers a new or repaired hearing aid. *Id.* Dr. Cushing states he understands that Wexford provides hearing aid batteries to inmates. *Id*. Dr. Cushing attests that he "sees patients only after receiving a referral from Wexford" and has received none for Bridgeford since the February 27, 2013, appointment. *Id*. ¶ 12.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that

there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore,* 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson* 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990). The Court cannot assume existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

## DISCUSSION

### I.  Claims Against Wexford Defendants

#### A. Falsification of Records

Bridgeford claims that the Wexford Defendants have altered his medical records to create the misleading impression that he is noncompliant with medical orders. He also generally accuses them of falsifying his records and lying about his medical condition. The Wexford Defendants, by their declarations, categorically deny the allegations. Bridgeford has been afforded the opportunity to provide facts and details to support his vague and conclusory assertions and has filed numerous motions and self-styled pleadings in this case. Nevertheless, he

13

provides no factual predicate by verified exhibit, declaration, or otherwise to support his bald self-serving assertions. In fact, Bridgeford's prolonged and deliberate noncompliance with his prescribed insulin regimen is exhaustively and objectively demonstrated in the verified exhibits filed by the Wexford Defendants as reflected in the medical notes of numerous health care providers. Thus, even when this Court views the evidence in the light most favorable to Bridgeford, there is no genuine issue of material fact presented as to this claim and the Wexford Defendants are entitled to summary judgment in their favor as a matter of law.

### B. Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment. *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir.2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

In order to state an Eighth Amendment claim for denial of adequate medical care, a plaintiff must demonstrate that the actions of a defendant or the failure to act amounted to deliberate indifference to a serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. Farmer, 511 U.S. at 837. A "serious medical need" refers to a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at

241 (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999)). Proof of an objectively serious medical condition does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of a serious medical condition. *Farmer*, 511 U.S. at 839.

In order to state a constitutional claim for denial of medical care, a plaintiff must demonstrate that a defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle*, 429 U.S. at 106. The treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is enough for an Eighth Amendment claimant to show that "the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842. As the Fourth Circuit has explained: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir. 1997).

Deliberate indifference to a serious medical need "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. It requires proof that the prison official knew of or was aware of the inmate's need for medical attention and disregarded an excessive risk to the inmate's health or safety. *Id*. at 837. For liability to attach based on a violation of the Eighth Amendment, the law "requires consciousness of a risk ...." *Id*. at 840. "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate

indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Deliberate indifference requires that a defendant have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). "[A]ny negligence or malpractice on the part of ... doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference[.]" *Id.* at 166. Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Inmates do not have a constitutional right to the treatment of their choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir.1977) (emphasis added). "Disagreements between an inmate and a physician" as to the "inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Estelle,* 429 U.S. at 105–06; *Russell* 528 F.2d at 319.

Further, prison officials are entitled to rely on medical judgments and the expertise of prison physicians and other medical providers concerning the course of treatment deemed necessary for prisoners. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Miltier*, 896 F.2d at 854–55 (stating that supervisory prison officials are entitled to rely on professional

judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).

In evaluating Bridgeford's medical records and numerous visits with medical staff, it is clear that Wexford Defendants' conduct was not so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. The medical records show Bridgeford was examined, diagnosed, and provided laboratory tests, x-rays, prescription medication and other treatments. Although Bridgeford may not agree with the course of treatment or the medication prescribed, his disagreement is not cognizable under the Eighth Amendment.

### 1. Hearing Impairment

Bridgeford was without a hearing aid for almost four months. While the delay is troubling because Bridgeford complained to medical providers that he was unable to hear the prison public address system calls for meals and phone calls, Bridgeford does not allege sustaining any physical injury during the time he was without a hearing aid. [14]

The record does not demonstrate requisite deliberate indifference necessary to state an Eighth Amendment claim. On October 11, 2012, Dr. Nimely ordered an audiology consultation for Bridgeford when she learned that his hearing aid was not working. On January 10, 2013, Dr. Nimely submitted a request to order the new hearing aid after Bridgeford complained he was unable to hear the loudspeaker system. On January 18, 2013, Wexford's utilization review approved a new standard hearing aid which Bridgeford received on February 27, 2013. Dr. Nimely's actions were neither grossly incompetent nor inadequate as to amount to deliberate indifference. Indeed, it appears that upon learning Bridgeford was unable to hear the prison

---

[14] As noted, Dr. Nimely attests that Bridgeford was able to communicate with others and understand verbal communication without a hearing aid. *Infra* p. 10; ECF 61, Exhibit 2, ¶ 14 (Nimely decl.).

public address system, Dr. Nimely promptly ordered the hearing aid. As Dr. Nimely's actions do not show deliberate indifference necessary to state a claim of constitutional magnitude, summary judgment will be entered in favor of the Wexford Defendants as to this claim.

## 2. Eczema

Bridgeford fails to demonstrate Defendants acted with deliberate indifference to his serious medical needs by discontinuing non-formulary Eucerin Plus and substituting Lubri-Skin. Bridgeford's refusal of the formulary moisturizer offered represents a disagreement with medical providers over the course of his treatment. Bridgeford does not have a constitutional right to the over-the-counter moisturizer of his choice and his claim falls far short of amounting to a matter of constitutional moment. Accordingly, the Court concludes there is no genuine issue of fact presented and the Wexford Defendants are entitled to judgment in their favor as to this claim.

## 3. Pain Treatment

The record shows Bridgeford's complaints of arm and shoulder pain were evaluated and treated by Defendants and other medical providers with medication. Insofar as Bridgeford's claim is based on his belief that he needs a cortisone injection, his medical records indicate that he has been repeatedly informed that such treatment is not advised while his diabetes is uncontrolled. Again, his disagreement with medical providers over the course of treatment does not constitute a colorable constitutional claim. Absent any demonstration by Bridgeford that Defendants were deliberately and intentionally indifferent to his medical needs, summary judgment will be entered in favor of the Wexford Defendants.

### C. Americans with Disabilities Act

Insofar as Bridgeford wants access to TTY services violates his rights under the Americans with Disabilities Act (ADA)[15] he now has access to TYY communication at Roxbury Correctional Institution and he has been provided the relief he requests. In any event, Bridgeford has shown no evidence he requires TTY access when Bridgeford is wearing his hearing aid, and the request was made to accommodate the needs of his deaf father. Moreover, even if Bridgeford were to demonstrate a violation of his rights under the ADA, which he does not, the Wexford Defendants, as contractual medical providers, are unauthorized to give inmates such access.

### II. Claims against Dr. Cushing

Bridgeford claims Dr. Cushing failed to replace his hearing aid, failed to provide new batteries to him, and refused to provide follow-up treatment. The record shows that Dr. Cushing recommended that a new hearing aid be provided to Bridgeford. After Wexford approved a new standard hearing aid, Dr. Cushing fitted Bridgeford for the hearing aid and gave him courtesy batteries.

To the extent Bridgeford claims Dr. Cushing has denied him TTY access in violation of the ADA, the record demonstrates Bridgeford is requesting TYY access not based on his own needs, but because his father is deaf and TYY services would provide a means for his father to communicate with him by phone. As noted, Bridgeford does not required TYY access when wearing his hearing aid. In any event, Dr. Cushing is a contractual audiologist without authority to implement Bridgeford's access to TYY. Under these circumstances, there is no genuine issue of fact presented and Dr. Cushing is entitled to summary judgment as a matter of law.

---

[15] *See* Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq.

## CONCLUSION

For these reasons, the Court will grant summary judgment in favor of the Wexford Defendants and Dr. Cushing. Judgment will be entered against Plaintiff.[16] A separate Order follows.

/s/
PETER J. MESSITTE
January 14, 2014  UNITED STATES DISTRICT JUDGE

---

[16] Bridgeford has filed a number of self-titled pleadings and motions which will be denied or dismissed as well. His request an injunction (ECF 75) as he has failed to meet the standard for a preliminary injunctive relief set forth in by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).